UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRENDA KAY CAUDILL,**

    **Plaintiff,**

                                    Civil Action 2:16-cv-818
                                    Judge George C. Smith
    **v.**                                  Magistrate Judge Chelsey M. Vascura

**COMMISSONER OF SOCIAL SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Brenda Kay Caudill ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), Defendant's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply to Defendant's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 5). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**

Plaintiff protectively filed her application for Title II Social Security Benefits on December 20, 2012, alleging a disability onset date of December 7, 2012. Plaintiff's application was initially denied on May 8, 2013. Upon reconsideration, Plaintiff was found disabled, with a June 30, 2013 onset date. Plaintiff timely appealed the partially favorable decision. An

1

administrative hearing was held before Administrative Law Judge John L. Shailer (the "ALJ") (ECF No. 5, at PAGEID# 53-80), who determined that Plaintiff was not disabled. (*Id.* at PAGEID# 34-47.)

The ALJ held the hearing on June 2, 2015, at which Plaintiff, represented by counsel, testified. (*Id.* at PAGEID# 53-80.) Also present and testifying at the hearing were the medical expert, Ronald E. Kendrick, M.D. (the "ME"), and the vocational expert, Millie M. Droste (the "VE"). *Id.*

When asked why she decided that she needed to stop working at the end of 2012, Plaintiff testified that she had "increased pain" and "anxiety," and that she "was confused" and "forgetting things." (*Id.* at PAGEID# 42.) Plaintiff explained that she initially injured her back in 2001 and had surgery in 2004. (*Id.* at PAGEID# 59.) She also testified that she was diabetic, has a "70 percent loss in [her] left ear and a 10 percent loss in [her] right," has high blood pressure, has sleep apnea, and was previously treated for depression and anxiety for a couple of months in 2013. (*Id.* at PAGEID# 60-61.) Plaintiff further testified that she received no counseling since 2013 for depression or anxiety, adding that she does not get anxious like she used to and that her anxiety usually goes away after a few minutes if she just relaxes and takes deep breaths. (*Id.* at PAGEID# 61, 69.)

The ME testified regarding Plaintiff's documented physical impairments. The ME noted that in 2004, long before her alleged onset date, Plaintiff had a lumbar fusion from L3 to S1. (*Id.* at PAGEID# 72.) Subsequent films demonstrated multilevel degenerative disc disease in her back. (*Id.*) The ME indicated that Plaintiff was diabetic and had sleep apnea and severe obesity. (*Id.*) The ME did not address Plaintiff's mental or psychological allegations. (*Id.*) The ME provided Plaintiff's limitations in response to the ALJ's questions as follows:

> A  . . . I would say from the alleged onset on, her functional capacity would be confined no better than sedentary. * * * no lifting ten pounds occasionally, less than ten pounds frequently; standing or walking two out of three hours; sitting six out of eight. I'd restrict bending, stooping, kneeling, and crawling, postural that is, to only occasional. I don't see any restrictions that apply to the upper extremities. She certainly couldn't do ladders or work in high places or around dangerous, moving machinery.
>
> Q  Very good. And for her loss of hearing on the – on that left side, would there be a – what would be an appropriate kind of limitation from – a workplace limitation due to that?
>
> A  Well, I think she should avoid environments of, you know, high noise levels. I don't know what decibels would be tolerable, but primarily more of a quiet environment.
>
> Q  Okay. Very good. And do you consider her pain, her allegations of pain within that opinion?
>
> A  Yes. That's primarily the reason for her inabilities to perform work as she did, you know, prior to her [INAUDIBLE] starting.
>
> Q  Okay. And you've already mentioned the aggravating effects of weight in the way you just were describing those things.
>
> A  Yes. I've taken that into consideration.
>
> ALJ:  All right. Counselor, do you have any questions for the Doctor?
>
> ATTY:  No, Your Honor, I do not.

(*Id.* at PAGEID# 73-74.)

The VE provided her testimony after the ME. The VE testified that Plaintiff's past jobs included the following positions: nurse supervisor, general duty nurse, licensed practical nurse, and community health nurse. (*Id.* at PAGEID# 75.) In VE determined that an individual with the limitations the ME assessed could not perform Plaintiff's past relevant work. (*Id.*) When asked whether there were "any transferrable skills" from Plaintiff's past positions given Plaintiff's "profile," the VE identified the following transferable skills: the ability to "identify codes, ICD-9 codes;" "work around others and be able to evaluate [patients];" and "triage." (*Id.* at PAGEID# 75-76.) The VE explained that "triage" meant "[t]he ability to organize according

3

to level of importance," not requiring hands-on with patient, but "more of a prioritization."  (*Id.* at PAGEID# 76.)  The VE testified that the following positions would accommodate an individual with Plaintiff's profile with these transferred skills: medical voucher clerk (60,000 jobs nationally), hospital admitting clerk (100,000 jobs nationally), and claims examiner (120,000 jobs nationally).  (*Id.* at PAGEID# 76-77.)  The VE added that all three of these positions are sedentary and involve a quiet noise level.  (*Id.* at PAGEID# 77.)

Plaintiff's counsel did not ask about the level of vocational adjustment required at the hearing and instead focused on whether the positions the VE identified could be performed with additional limitations.  More specifically, Plaintiff's counsel asked whether those positions could be performed if "claimant would need an environment with low time and production standards; could make simple, work-related decisions; could get along with others including supervisors and coworkers on at least a superficial basis; and could adapt to changes in the work environment that are routine and easily explainable."  (*Id.* at PAGEID# 78.)  The VE testified that the inclusion of the limitation of "simple, repetitive tasks" would prevent performance of both Plaintiff's past work and also the other positions she had identified.  (*Id.*)

On July 7, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PAGEID# 47.)  The ALJ noted that Plaintiff met the insured status requirements through December 31, 2017.  (*Id.* at PAGEID# 39.)  At step one

of the sequential evaluation process,[1] the ALJ stated that Plaintiff had not engaged in substantially gainful activity since December 7, 2012, the alleged onset date. (*Id.*)

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, diabetes mellitus, obstructive sleep apnea, hypertension, obesity, and partial hearing loss. (*Id.*) The ALJ considered Plaintiff's medically determinable mental impairments of depression and anxiety, but concluded that they were non-severe because "considered singly and in combination, [Plaintiff's mental impairments] do not cause more than minimal limitation in [her] ability to perform basic mental work activities." (*Id.* at PAGEID# 40.) As discussed more fully below, the ALJ offered a thorough discussion in support of his step-two findings.

The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can never climb and can occasionally bend, crawl, stoop and kneel. [Plaintiff] must also avoid hazards and moving machinery and must work in an environment without high noise levels.

(*Id.* at PAGEID# 42.) Although the ALJ found that Plaintiff's medical impairments could reasonably be expected to cause the alleged symptoms, he found her statements concerning the intensity, persistence, and limiting effects of the symptoms to be not entirely credible. (*Id.* at PAGEID# 43.) In particular, the ALJ noted that although Plaintiff alleged disabling mental impairments, she admitted at the hearing to a short course of treatment and indicated that the medications prescribed by her primary care doctor had improved her condition. (*Id.*) These admissions, coupled with the treatment evidence and persuasive opinion from the consultative examiner, led the ALJ to determine that Plaintiff's allegations of severe mental impairment were not credible. (*Id.*)

As for the opinions in the medical evidence, the ALJ assigned little weight to the state-agency examiners, concluding that their opinions regarding Plaintiff's physical impairments appeared to understate her limitations, while their findings related to her mental impairments were not sufficient for a finding of severe. (*Id.* at PAGEID# 45.) The ALJ likewise accorded little weight to the independent medical evaluation performed by Dr. Nancy Renneker. (*Id.*) The ALJ assigned great weight to opinion of consultative examining psychologist John Reece, Psy. D. (*Id.*) The ALJ also accorded great weight to the ME's opinions and largely adopted the ME's physical RFC assessment. (*Id.*)

The ALJ concluded that Plaintiff was unable to perform her past relevant work. (*Id.* at PAGEID# 46.) He further found that because Plaintiff was fifty-four years old at her alleged disability onset date, she was an individual "closely approaching advanced age" as contemplated

under the regulations. (*Id.*) The ALJ acknowledged that she "subsequently changed to the advanced age" category upon turning fifty-five. (*Id.*) Relying on the VE's testimony, the ALJ identified that Plaintiff's past work as a nurse supervisor, general duty nurse, licensed practical nurse, and community health nurse provided her with the following transferable skills: "identification of medical (ICB9) codes, work with others in evaluation of patients, and an ability to prioritize patients by their signs and symptoms for the purposes of triage." (*Id.*)

Relying on the VE's testimony and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff had acquired transferable skills that could be used in other occupations with jobs existing in significant numbers in the national economy. (*Id.*) The ALJ concluded that based on the VE's testimony, an individual with Plaintiff's profile could perform the following jobs: medical voucher clerk (60,000 jobs nationally), hospital admit clerk (100,000 jobs nationally), and claims examiner (120,000 jobs nationally). (*Id.* at PAGEID# 47.) The ALJ therefore concluded that Plaintiff was not disabled as contemplated under the Social Security Act from December 7, 2012 through the date of the decision, July 7, 2015.

On June 29, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at PAGEID# 27.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 9), Plaintiff raised two contentions of error. Plaintiff first contends that the ALJ erred in failing to include limitations in the RFC arising from her non-severe mental impairments. (*Id.* at PAGEID# 598-599.) Plaintiff next submits that the ALJ erred in finding that she had skills transferable to the sedentary jobs he cited in denying benefits at step five. (*Id.* at PAGEID# 599-603.) Within this contention of error, Plaintiff argues that the

7

ALJ failed to sufficiently inquire into and make a finding directly concerning the degree of vocational adjustment required by the sedentary jobs identified by the VE. (*Id.*)

The Commissioner filed a Memorandum in Opposition to Plaintiff's Statement of Errors on May 15, 2017. (ECF No. 16.) With regard to Plaintiff's first contention of error, the Commissioner counters that the ALJ properly considered Plaintiff's non-severe mental impairments in assessing her RFC and appropriately did not include limitations in to his RFC determination because of his finding that these impairments were mild. As to Plaintiff's second error, the Commissioner posits that the ALJ reasonably relied upon the VE's testimony to conclude that she had transferrable skills that could be transferred to jobs with significant numbers in the nation. (*Id.* at PAGEID# 626-628.) The Commissioner alternatively asserts that that even if the ALJ and VE should have been more explicit regarding the lack of additional skills necessary for these jobs, Plaintiff waived this argument by failing to ask the VE for clarification at the hearing. (*Id.* at PAGEID# 630-631.)

In her Reply, Plaintiff reiterates that the ALJ was required to consider all of her medically determinable impairments and assess the RFC based on all of the relevant medical and other evidence. (ECF No. 20, at PAGEID# 641.) She also again asserts that remand is necessary to clarify the issue of transferability of skills in the case. (*Id.* at PAGEID# 642.)

**II.**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.

As set forth above, in her Statement of Errors, Plaintiff advances the following two contentions of error: (1) the ALJ erred in crafting an RFC that fails to accommodate her alleged non-severe mental limitations; and (2) the ALJ erroneously found that she had transferable skills to the sedentary jobs identified at step five. The Undersigned considers Plaintiff's contentions of error in turn.

9

### A. The ALJ's Consideration of Plaintiff's Mental Impairments

Plaintiff contends that the ALJ's RFC and hypothetical given to the VE were deficient because neither contained limitations that adequately address her alleged mental impairments. In support, Plaintiff focuses on the medical opinion of consultative examiner Dr. Reece, which the ALJ accorded great weight. (ECF No. 9, at PAGEID# 598.) Plaintiff suggests that even though Dr. Reece found her mental illness symptoms to have only a "mild effect on her workplace history in the area of stress tolerance," the ALJ is required to account for these "mild" effects in the RFC and hypothetical. (*Id.* at PAGEID# 598-99.) The Commissioner counters that the ALJ did consider Plaintiff's non-severe mental impairments in assessing her RFC and creating the hypothetical, and that such a mild mental functional limitation finding does not require inclusion of restrictions in the RFC. (ECF No. 16, at PAGEID# 621-22.) The Undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

As a threshold matter, Plaintiff correctly points out that in assessing her RFC, the ALJ must consider the limiting effects of both her severe and non-severe impairments. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003) (citing 20 C.F.R. § 404.1545(e)). However, contrary to Plaintiff's assertion, the ALJ did, in fact, consider her mental impairments, but concluded that RFC limitations attributable to her mental impairments were not warranted. (*See* ECF No. 5 at PAGEID# 14-15 (stating that "the following residual functional capacity assessment reflects that degree of limitation that the undersigned has found in the 'paragraph B' mental function analysis")). In reaching this conclusion, the ALJ offered a thorough analysis, which included consideration of Plaintiff's allegations and hearing testimony, medications, treatment history/lack of treatment history, the opinion of Dr. Reece, and a function-by-function discussion of the "Paragraph B" criteria. (*See id.*) With regard to his discussion of the

Paragraph B criteria, the ALJ stated as follows:

> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant indicates difficulties with some aspects of personal care and with anything other than light shopping and housework (3E). To the extent that the claimant alleges these problems, they largely stem from her physical impairments and not her mental impairments (Id.).
>
> The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant reported she socializes with her family and uses Facebook daily, but alleges some "shortness" with other due to pain. She did however deny problems getting along with authority figures or a history of firings or layoffs due to problems getting along with others (3E).
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant alleged difficulty concentrating and focusing. She denied problems managing her finances and in following written or spoken instruction, but alleged generalized poor memory and concentration as well as problems with stress and change in routine (3E). The claimant has experienced no episodes of decompensation.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1)).

(ECF No. 5, at PAGEID# 560-61.) The undersigned concludes that the ALJ's discussion amply supplies substantial evidence supporting his decision to omit mental limitations into Plaintiff's RFC.

Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not *require* inclusion of mental limitations into the RFC. *See, e.g.*, *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations); *see also* 20

C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."). Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)). Here, consistent with the ALJ's determination, notwithstanding his determination that Plaintiff suffered from mental impairments, Dr. Reece declined to include any functional limitations on her workplace abilities within the "FUNCTIONAL ASSESSMENT" portion of his opinion. (ECF No. 5 at PAGEID# 423.)

Finally, Plaintiff's challenge to the validity of the hypothetical question posed to the VE lacks merit. The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his/her past relevant work given his/her RFC. 20 C.F.R. § 404.1560(b)(2). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is

well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that the failure to incorporate limitations into the hypothetical question that the court gave no weight was not in error). Here, the ALJ's hypothetical question to the VE incorporated all of the limitations that he found to be credible and supported by the evidence. Moreover, substantial evidence supports the ALJ's rejection of the additional limitations Plaintiff seeks to include. The ALJ therefore did not err in relying on the VE's testimony.

In sum, the undersigned finds Plaintiff's first contention of error to be without merit. It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's Finding of Transferable Skills**

The undersigned finds Plaintiff's second contention of error to likewise be without merit. Within her second contention of error, Plaintiff argues that the ALJ erred at step five in finding that Plaintiff had acquired skills that would transfer to a significant number of jobs that exist in the national economy. (ECF No. 9, at PAGEID# 599.) Plaintiff asserts that the ALJ failed to sufficiently inquire into and determine the degree of vocational adjustment required in the sedentary jobs the VE identified. (*Id.* at PAGEID# 601.) Specifically, Plaintiff takes issue with the VE's statement that her skills would transfer to the medical voucher and claims examiner positions because they are "in a completely different industry" than Plaintiff's prior job in nursing. (*Id.*) Plaintiff posits that the remaining 100,000 jobs available nationwide for a hospital admit clerk is arguably not significant. (*Id.*) Also within this contention of error, Plaintiff highlights that the ALJ did not ask the VE to assume an individual of the same age or education as Plaintiff and further failed to inquire into whether the sedentary jobs required any additional

13

skills. (*Id.* at PAGEID# 601-02.) The Commissioner counters that the VE identified jobs that would require little adjustment and that Plaintiff waived the issue of vocational adjustment as neither Plaintiff nor her attorney raised it at the hearing. (ECF No. 16, at PAGEID# 630-31.)

The regulations provide the following guidance for assessing transferability of skills:

(d) Skills that can be used in other work (transferability)—

> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>
> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—
>
>> (i) The same or a lesser degree of skill is required;
>>
>> (ii) The same or similar tools and machines are used; and
>>
>> (iii) The same or similar raw materials, products, processes, or services are involved.
>
> (3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.
>
> (4) Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. *If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous*

> *work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.* (See § 404.1567(a) and § 201.00(f) of appendix 2.) If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see § 404.1567(b)). If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(b) and Rule 202.00(f) of appendix 2 to this subpart.)

20 C.F.R. § 404.1568(d) (emphasis added).

Plaintiff was 54-years-old on her alleged disability onset date, which is defined as an individual closely approaching advanced age. 20 C.F.R. § 404.1568(d); (*see also* ECF No. 5, at PAGEID# 46.) She subsequently changed to the advanced-age category on July 1, 2013, when she turned 55 years old. 20 C.F.R. § 404.1568(e); (*see also* ECF No. 5, at PAGEID# 46.) Plaintiff was 57 years old at the date of her hearing. (ECF No. 5, at PAGEID# 46.) Thus, because of Plaintiff's age and the sedentary RFC he assessed, the ALJ was required to determine whether Plaintiff maintained transferable skills to sedentary work with very little vocational adjustment.

As Plaintiff points out, during the hearing neither the VE nor the ALJ explicitly used the phrase "vocational adjustment." The testimony the VE offered, however, specifically addressed Plaintiff's transferable skills and the potential sedentary jobs that were similar to her previous work. The VE rendered her testimony after the ME outlined Plaintiff's advanced age, education, vocational profile, and the RFC the ALJ ultimately assessed. The VE then proceeded to explain that Plaintiff had acquired certain transferable skills from her past relevant work history, which

15

the VE indicated was performed at SVP levels 6 and 7. She specifically identified those skills as identification of medical (ICB9) codes, working with others in evaluation of patients, and an ability to prioritize patients by their signs and symptoms for the purposes of triage. (*Id.* at PAGEID# 75-76.) The VE went on to testify that an individual with those enumerated transferable skills could work as a medical voucher clerk (SVP level 3), hospital admit clerk (SVP level 4), or claims examiner (SVP level 7). (*Id.* at PAGEID# 77.) In his decision, the ALJ concluded that these positions "require skills acquired in [Plaintiff's] past relevant work but no additional skills" and also that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." (*Id*. at PAGEID# 47.)

Based upon the foregoing, the undersigned concludes that the ALJ reasonably relied upon the VE's testimony and that substantial evidence supports the ALJ's findings of transferability. *See, e.g.*, *Sanks v. Astrue*, No. 08-10066, 133 Soc. Sec. Rep. Service 103 (E.D. Mich. July 28, 2008) (despite the lack of the phrase vocational adjustment, the court found that the issue of transferability sufficiently discussed); *Costello v. Colvin*, No. 2:13-CV-12138, 2014 WL 12572681, at *7 n.4 (E.D. Mich. June 17, 2014) (noting that the ALJ did not explicitly address the vocational adjustment but adequately considered it nonetheless); *cf. Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 824 (6th Cir. 1990) (vocational expert testimony comparing past work to prospective work required little if any vocational adjustment).

Moreover, beyond pointing out that two of the three positions the VE identified involve a different industry, Plaintiff has not offered any vocational evidence undermining either the VE's testimony or the ALJ's determination that the positions do not require skills beyond those acquired in her past relevant work. *See Reineck v. Colvin*, No. 1:13-cv-01690, 2014 WL 3014014, at *13 (N.D. Ohio July 3, 2014) (ALJ properly relied on VE's testimony regarding

16

transferability where the claimant failed to offer specific evidence in support of her assertion that it was questionable whether the jobs the VE identified required very little vocational adjustment).

Further, even if the Court excluded the medical voucher clerk and the claims examiner positions, the hospital admit clerk position remains. The VE testified that this position has 100,000 jobs nationwide, which courts have found to constitute a significant number of jobs. *See, e.g.*, *Kappesser v. Comm'r of Soc. Sec. By & Through U.S.*, 69 F.3d 537, 1995 WL 631430, *4 (6th Cir. 1995) (422 jobs locally, 1,149 state-wide and 101,212 nationally constituted a significant number of jobs); *Nash v. Sec'y of Health & Human Servs.*, 59 F.3d 171, 1995 WL 363381, at *3 (6th Cir. 1995) (unpublished table decision) (holding that 70,000 sedentary jobs in the national economy was a significant number); *Taylor v. Chater*, 67 F.3d 300, 1995 WL 592031, at *1 (6th Cir. 1995) (640 jobs locally constituted a significant number of jobs); *Bishop v. Shalala*, 64 F.3d 662, 1995 WL 490126, at *2–3 (6th Cir. 1995) (6,100 jobs existing in national economy constituted a significant number of jobs); *Rosic v. Comm'r of Soc. Sec.*, No. 1:09CV1380, 2010 WL 3292964, at *11 (N.D. Ohio Aug. 19, 2010) (800 jobs locally and 120,000 jobs nationally represented significant number of jobs). In short, although the undersigned finds no error, any such error would be harmless.

For the foregoing reasons, the undersigned finds that the ALJ's finding of transferable skills is supported by substantial evidence. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## IV.

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner of Social Security's decision.

V.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE